# UNITED STATES DISTRICT COURT
for the
Eastern District of California



FILED
JAN 24 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| United States of America<br>v.<br>Sheldon KING<br><br>Defendant(s) | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  1:19 MJ 00018 SKO |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 8, 2019,__ in the county of __Fresno__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |

PENALTIES
10 years maximum term of imprisonment
$250,000 fine
3 years of supervised release
$100 special assessment

This criminal complaint is based on these facts:

See Attached Affidavit of Special Agent Brandon Stallworth, which is incorporated herein by reference.

☑ Continued on the attached sheet.

_____
Complainant's signature

Brandon Stallworth, Special Agent, ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/24/19

_____
Judge's signature

City and state: Fresno, California

Hon. Sheila K. Oberto, U.S. Magistrate Judge
Printed name and title

# I. AFFIDAVIT

I, Brandon M. Stallworth, being sworn, depose and state the following:

1. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been employed since September of 2015. Previous to my employment as a Special Agent, I was employed as a Deputy Probation Officer with Fresno County Probation for approximately nine months and a Correctional Officer with the Federal Bureau of Prisons for approximately one year. I am currently assigned to the San Francisco Field Division/Fresno Field Office. I completed twenty-seven weeks of training, which was comprised of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center and ATF National Academy in Glynco, Georgia. I received extensive training in firearm identification, the identification and effects of controlled substances, the identification of improvised explosive devices, surveillance and electronic surveillance, and undercover investigations. During the course of my employment with ATF, I have investigated, and assisted in the investigation of criminal violations relating to firearms and/or narcotics, including 18 U.S.C. § 922(a)(1)(A) – dealing firearms without a license, 18 U.S.C. § 922(g)(1) – felon in possession of firearm, 18 U.S.C. § 922(g)(9) – prohibited person in possession of firearm, and 21 U.S.C § 841(a)(1) - possessing with intent to manufacture, distribute, or dispense, a controlled substance. During these investigations, I have participated in and utilized the following investigative tools: conducting physical surveillance, interviewing suspects, writing affidavits for and executing arrest warrants, handling confidential informants, analyzing phone records obtained from pen registers, trap and trace devices, and the physical devices, and collecting and processing evidence.

## II. PROBABLE CAUSE

2. 18 U.S.C. § 922(g)(1) prohibits any person who has previously been convicted of

1

an offense punishable by imprisonment for more than one year from possessing a firearm or ammunition that has traveled in interstate or foreign commerce.

3. This affidavit is in support of a complaint charging Sheldon KING ("KING") with a violation of 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm that has traveled in interstate or foreign commerce. The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all the information known to me and other law enforcement investigators. Rather, this affidavit serves to establish probable cause for the arrest of KING.

4. The information in this affidavit is based on my personal knowledge, my conversations with those directly involved in this investigation, and my review of police reports from this case.

5. According to Fresno Police Department ("FPD") police reports, on January 8, 2019, FPD Detective Tom Gregory obtained a search warrant for KING's residence located at 1524 East Lester Avenue, Fresno, CA. At approximately 18:00 hours, officers assigned to the Multi-Agency Gang Enforcement Consortium ("MAGEC") executed the search warrant at the residence. Prior to the search of the residence, KING, KING's wife, and six juveniles exited the residence and were detained. Officers assigned to MAGEC then searched the residence.

6. During the search of the master bedroom, officers found a Norinco, Model 1911, .45 caliber pistol (".45 caliber") with compatible magazine containing approximately seven rounds of ammunition concealed between the mattress and box spring. Furthermore, officers found a black firearm holster and KING's California identification card in the closet of the master bedroom.

7. During the search of a bedroom belonging to two of KING's children, officers found an A.A Arms, Model AP9, .9mm caliber pistol ("AP9") with compatible magazine containing approximately 20 rounds of ammunition, an Arminus, Model HW 357, .357 caliber

2

revolver ("revolver"), and a box of .357 ammunition located inside a nylon bag in the closet.

8. During the search of the garage, officers found a Velobrom, Model AK47[1], 5.56 caliber rifle ("AK47") and a compatible magazine containing approximately 20 rounds of ammunition inside a black duffle bag, which was concealed inside a green container.

9. KING was subsequently arrested and transported to FPD Headquarters, where he was interviewed initially by ATF SA Eric Penman and me.

10. I informed KING that we were interviewing him because officers located firearms at his residence. I informed KING that we learned that one of the firearms – the AK47 located in the garage at his residence – was stolen from the U.S. Army Ft. Irwin military base. I then advised KING of his Miranda rights. KING waived his rights and agreed to speak with us.

11. During questioning, KING told us that he was using the .45 caliber firearm for protection. I asked KING where that firearm was located and KING informed me that the firearm was "underneath the bed." I asked KING where he obtained the .45 caliber firearm that was under his mattress. KING stated that he'd had the firearm for a while and that he had never shot it. KING stated that he obtained the .45 caliber firearm after some of his belongings were stolen.

12. When asked about the AK47 that was found in the garage, KING informed agents that he took the firearm from an individual who he identified as his partner because he was trying to help him out. KING informed us that he knew this individual as "D" and that he had not seen him in approximately five to six years. KING informed us that he received the AK47 from "D" and had kept it for approximately four to five years. KING further stated the firearm was wrapped in a backpack in the garage. I asked KING if he knew that the firearm was stolen. KING replied that he did not. I asked KING if he had ever shot the firearm. KING replied that he

---

[1] I conducted a query of this firearm's serial number in the Automated Firearms System (AFS) database. The query revealed that the firearm was stolen from the U.S Army- Ft. Irwin on or about July 18, 2011. Based on an initial function check performed by ATF Special Agent Eric Penman, it is believed to be a fully automatic machine gun.

had not. KING related that he had paid $400.00 for the firearm. KING denied knowing that the weapon was fully automatic.

13. I asked KING if he knew anything about the AP9 and the revolver that were found in the closet of the children's bedroom. KING initially stated that he did not know anything about those two firearms, but later confirmed that he knew that there were four firearms in the house. KING denied that any of the firearms were in the children's room.

14. I asked KING if his wife had any firearms. KING replied that she did not. I then asked KING if anyone outside of his residence had access to his residence. KING replied in the negative. I then asked KING if he was aware that he could not have the AK47 that was located in the garage. KING replied, "No not really. I think I got it before the ban. I think I was supposed to get a smaller clip or something I don't know." He later indicated that he knew that he was not supposed to have guns "period."

15. After we concluded their interview, KING was interviewed by FPD detectives Alfred Lopez and Tom Gregory. FPD detectives asked KING if he still understood his rights. KING replied that he did. FPD officers asked KING about the revolver and the AP9 found in the closet of the bedroom belonging to two of his children. KING informed detectives that when he exited the residence, the AP9 and the revolver were in his room. KING told FPD detectives that he'd had the AP9 for a "couple years." KING told FPD detectives that he received the revolver before Christmas. When asked about what he did when he received the revolver, KING stated that his wife told him that she was going to "put it up." Detectives then asked KING where he put the firearm. KING informed detectives that it was in the closet in the master bedroom.

16. Based on the Fresno County Superior Court of California records that I reviewed, KING has two prior felony convictions: (1) a 2004 Fresno County Superior Court conviction for a violation of California Penal Code Section 273.5(a) – Corporal Injury to Spouse; and (2) a 2006 Fresno County Superior Court conviction for a violation of California Health and Safety

Code Section 11352(a) – Transportation or Sale of a Controlled Substance- Cocaine.

17. On January 23, 2018, I spoke with ATF SA Bradley Dickey, who specializes in the interstate nexus of firearms and ammunition. Based on photographs and description of the firearms that I provided, SA Dickey indicated that the A.A Arms, Model AP9, .9mm caliber pistol and the Norinco, Model 1911, .45 caliber pistol, were not manufactured in California.

### III. CONCLUSION

18. The above facts set forth probable cause to believe that Sheldon KING is in violation of Title 18, United States Code, Section 922(g)(1), felon in possession of a firearm. I request that an arrest warrant be issued for Sheldon KING for this violation.

*[signature]*
Brandon M. Stallworth, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me, and subscribed in my presence, this **24th** day of January, 2019.

*[signature]*
Honorable Sheila K. Oberto
United States Magistrate Judge

Reviewed and approved as to form and content by:

/s/ KATHERINE SCHUH
Katherine Schuh
Assistant U.S. Attorney